# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-0109V
UNPUBLISHED

| | |
|---|---|
| CHRISTINE HEIL,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: January 25, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Statutory<br>Six-Month Requirement; Influenza<br>(Flu) Vaccine; Ruling on Entitlement;<br>Table Injury; Shoulder Injury Related<br>to Vaccine Administration (SIRVA) |

*Scott William Rooney, Nemes, Rooney, P.C., Farmington Hills, MI, for*
  *Petitioner.*

*Joseph Adam Lewis, U.S. Department of Justice, Washington, DC, for Respondent.*


**FINDINGS OF FACT AND RULING ON ENTITLEMENT**[1]


On January 22, 2019, Christine Heil filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered right arm and shoulder pain caused-in-fact by the influenza ("flu") vaccine she received on February 11, 2016. Petition at 1, ¶¶ 6, 32. Petitioner specifically asserts that she "has been in constant pain" since vaccination (*id.* at ¶ 13) and that her "injuries have continued for more than six months

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all Section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

after the vaccination injury on-set" (*id.* at 34). The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find the onset of Petitioner's right shoulder pain occurred within 48 hours of vaccination, and she has satisfied the other requirements of a Table shoulder injury related to vaccine administration ("SIRVA"). Furthermore, I find Petitioner suffered the residual effects of the right arm and shoulder pain she experienced post-vaccination for more than six months. Petitioner is entitled to compensation under the Vaccine Act.

## I.       Relevant Procedural History

Ms. Heil filed her Petition without medical records on the eve of the expiration of the time to initiate a claim under the Vaccine Act's statute of limitation.[3] Over the subsequent nine-month period, she filed an affidavit and some of the required medical records. Exhibits 1-10, ECF Nos. 7, 11, 13, 19, 28, 30; Section 11(c).

On December 12, 2019, Respondent indicated he was interested in engaging in settlement discussions. ECF No. 35. Three months later, on March 16, 2020, he informed me that the parties had reached an impasse. ECF No. 46. During this time, Petitioner filed additional medical records and a second affidavit. Exhibits 11-14, ECF Nos. 40, 44.

On April 30, 2020, Respondent filed his Rule 4(c) Report setting forth his objections to compensation. ECF No. 48. Specifically, Respondent argued that Petitioner failed to establish that the onset of her pain began within 48 hours of vaccination (as required for a Table SIRVA claim), or that she suffered the residual effects of her injury for more than six months. *Id.* at 6-7; *see* 42 C.F.R. § 100.3(a)(XIV)(B) and (c)(10)(ii) (Table entry for SIRVA following receipt of a flu vaccine and Qualifications and Aids for Interpretation ("QAI") requirement regarding onset of pain); Section 11(c)(1)(D)(i) (regarding six-month severity requirement).

On July 8, 2020, I issued an order to show cause requiring Petitioner to file additional evidence regarding onset and the duration of her injury. ECF No. 51. In response, Petitioner filed a third affidavit (Exhibit 17); affidavits from her sister, her sister's husband, her husband, her two daughters, and her son-in-law (Exhibits 15-16, 18-21); and medical records and letter of certification from her neurologist (Exhibits 22-23). ECF Nos. 52, 54, 56, 58, 61, 65.

---

[3] Alleging immediate pain upon vaccination on February 11, 2016, Petitioner was required to file her petition prior to February 11, 2019. *See* Section 16(a)(2) (requiring that a petition be filed within 36 months of the first symptom or manifestation of a petitioner's injury).

On July 27, 2021, Respondent filed a motion for a ruling on the record. Respondent's Brief in Support of his Motion for a Decision on the Record ("Motion"), ECF No. 66. Arguing that Petitioner has still not provided sufficient evidence to establish onset within 48 hours or to show that she has satisfied the Vaccine Act's severity requirement, Respondent requested that I dismiss Petitioner's claim. *Id.* at 1, 8-14.

Regarding the issue of onset, Respondent stresses the 55-day period before Petitioner sought treatment of her right shoulder pain, and what he characterizes as Petitioner's vague language regarding the onset of her pain. Motion at 9-10. To support his argument regarding severity, he emphasizes the improvement noted during Petitioner's last physical therapy ("PT") session five months post-vaccination, the fourteen-month gap in treatment thereafter, and his assertion that Petitioner received another flu vaccine in her right deltoid nine months post-vaccination. *Id.* at 11, 13-14, He cites multiple cases in which a similar gap in treatment caused the special master to find a six-month duration of symptoms did not exist. *Id.* at 11-13.

In response, Petitioner requests that I find her injury occurred within 48 hours and lasted for more than six months, and "thereby allow[] this matter to go to hearing on damages." Petitioner's Response to Motion ("Response"), filed Sept. 10, 2021, at 1, ECF No. 69. Although not clearly stated, she appears to be requesting a ruling on entitlement in her favor.

Claiming that the almost two-month delay in treatment does not equate to a lack of symptoms, Ms. Heil stresses that she has consistently reported an immediate onset of her pain throughout provided medical histories and affidavits – an assertion which is supported by the affidavits of her family members. Response at 7-8. Regarding the duration of her injury, Petitioner claims that she had not fully recovered by her last PT session in early July 2016, that she either did not mention her continued right shoulder pain at subsequent appointments for other aliments because it would have been illogical to do so or that she mentioned her pain and it was not noted in the record. She maintains that she refused the second flu vaccine offered in November 2016. *Id.* at 8-10. Petitioner distinguishes the primary case cited by Respondent, *Lamarre*, and cites *Kirby* for the proposition that the failure to report every aliment a claimant is suffering when seeing a medical provider does not mean the underlying ailment did not exist at the relevant time. *Id.* (citing *Lamarre v. Sec'y of Health & Human Servs.,* No. 17-0010V, 2019 WL 7556396 (Fed. Cl. Spec. Mstr. Nov. 6, 2019); *Kirby v. Sec'y of Health & Human Servs.,* 997 F.3d 1378 (Fed. Cir. 2021)).

On October 1, 2021, Respondent filed a reply addressing the arguments made by Petitioner in her response. Respondent's Reply to Response ("Reply"), ECF No. 70. He continues to stress Petitioner's delay and gap in treatment, maintaining Petitioner has provided not rationale for either. *Id.* at 1-2. He again asserts that "compensation is not appropriate in this case, and the petition should be dismissed." *Id.* at 3.

Two weeks after Respondent filed his reply, Petitioner filed medical records which included the results of an MRI performed on July 8, 2021. Exhibit 25, filed Oct. 14, 2021, ECF No. 71; *see* Exhibit 25 at 2 (MRI results). On November 1, 2021, she filed the complete medical records from the orthopedist who treated her right shoulder pain and later left knee pain in 2016 (Exhibit 26), as well as medical records from her 2014 breast implant surgery (Exhibit 27). ECF No. 73. She provided no reason why the complete medical records from her orthopedist – now filed as Exhibit 26, which include the record from an August 30, 2016 visit that appears sufficient to satisfy the Vaccine Act's severity requirement, was not previously provided, despite multiple requests from Respondent.[4]

The matter is now ripe for adjudication.

## II.      Finding of Fact Regarding Onset and Duration

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and QAI for a Table SIRVA and whether her injury lasted more than six-months as required for all Table and non-Table claims. *See* 42 C.F.R. § 100.3(a) XIV.B.; 42 C.F.R. § 100.3(c)(10)(ii); Section 11(c)(1)(D)(i).

### A.      Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy

---

[4] Initially, Petitioner filed a portion of these orthopedic records as part of the medical records from Petitioner's PCP. *See* Exhibit 3. Although Respondent requested medical records from orthopedic treatment provided from April 26 through June 20, 2016, suspecting that some were outstanding, both in his Rule 4(c) Report and Motion, Petitioner did not provide a complete copy of the orthopedic records until this filing. *See* Rule 4(c) Report at 3 n.2; Motion at 3 n.3. When later filing these medical records, Petitioner provided no explanation for their earlier omission or her denial, from as late as September 2021, that they did not exist. Response at 5. A comparison of these medical records with the orthopedic records previously filed in Exhibit 3 reveal not all had been provided until this most recent filing.

evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). "The medical records made at the time treatment was sought or provided are far more reliable than the witnesses' testimony, five years later, to the contrary." *Id.* at *20.

However, this rule does not always apply. The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.,* 23 Cl. Ct. 726, 733 (1991) (quoting with approval the standard used by the special master below), *aff'd per curiam,* 968 F.2d 1226 (Fed. Cir. 1992). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The Claims Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other relevant and reliable evidence contained in the record. *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical

records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### B.      Analysis

I make the findings regarding onset and duration after a complete review of the record to include all medical records, affidavits, and additional evidence. Specifically, I base the findings on the following evidence:

- Prior to receiving the flu vaccine at issue, Petitioner suffered from obesity, breast cancer, hypothyroidism, depression, melanoma, and a right knee fracture due to a fall. Exhibit 3 at 17. She underwent a mastectomy in 2009, lap band surgery in 2011, right knee arthroscopy after a fall while rollerblading in 2012, and removal of her left breast implant due to infection in 2014. *Id.*; Exhibit 10 at 26 (regarding right knee surgery); Exhibit 27 at 16, 50 (regarding implant surgery).

- On January 14, 2016, one month prior to receiving the vaccine alleged as causal, Petitioner was seen by the orthopedist who performed her 2012 right knee arthroscopy for two months of right knee instability and a popping sensation with pain over her medial knee screw. Exhibit 10 at 26. Petitioner opted to undergo reconstructive knee surgery. *Id.* at 27-28.

- On February 11, 2016, Petitioner was seen by her primary care provider ("PCP") for a refill of her medications. Exhibit 3 at 17-19. At this time, she received a flu vaccine intramuscularly in her right deltoid. Exhibit 7 at 2 (vaccine record); *see also* Exhibit 3 at 20, 22 (noting 2/11/16 flu vaccine in record from the next PCP visit).

- On April 5, 2016 (almost two months post-vaccination), Petitioner returned to her PCP for a physical. Exhibit 3 at 20-23. At that visit, she complained of right arm pain which she attributed to the February 11, 2016 flu vaccine, reporting that her "right arm has been very painful since that injection." *Id.* at 20. She shared her concern that the flu vaccine might have been injected into her bursa and indicated she had to quit working with her personal trainer "because she can't do anything with her right arm." *Id.* An examination revealed "[p]oint tenderness over [the] upper lateral arm . . . [and] pain lifting it anteriorly and horizontally above 45 degrees." *Id.* at 21. Medical imaging of her right shoulder was ordered, and Petitioner was referred to orthopedics. *Id.* at 22.

- Performed on April 12, 2016, the ultrasound revealed an intact rotator cuff, evidence suggestive of fatty atrophy, and "[a] minimal amount of fluid in the subacromial-subdeltoid bursa." Exhibit 3 at 113. In the report, it was noted that Petitioner had complained of "left[5] shoulder pain for approximately two months." *Id.* The same day, Petitioner also underwent a bilateral digital mammogram which showed evidence consistent with her prior left breast cancer and subsequent bilateral mastectomy. *Id.* at 114.

- On April 26, 2016, Petitioner was seen by an orthopedist for right shoulder pain. Exhibit 26 at 10-11.[6] Describing constant pain at a level of six to eight out of ten which was exacerbated with use, Petitioner reported that "[s]he had a flu shot several months ago and has had pain in the right upper arm ever since." *Id.* at 10. She identified the onset of her pain as February 11th. *Id.* An examination revealed weakness and pain with the most painful being resisted external rotation. *Id.* at 10-11. Diagnosing Petitioner with "an early frozen shoulder," the orthopedist administered a steroid injection and prescribed PT. *Id.* at 11.

- On June 7, 2016, Petitioner returned to the orthopedist, indicating that the cortisone injection "helped for about a week" and that "she ha[d] really been pretty diligent with her exercises at home." Exhibit 26 at 9. After discussing the available options with Petitioner, the orthopedist determined that "the best thing to do [wa]s to go ahead and manipulate her shoulder . . . [and] put her in PT after that." *Id.* He prescribed additional Tramadol.[7] Exhibit 26 at 9.

- On June 20, 2016, Petitioner underwent a right shoulder manipulation under general anesthesia and received a second cortisone injection. Exhibit 14 at 1. In the history found in this record, it is noted that Petitioner experienced pain and stiffness within a few days of receiving the flu vaccine and "has

---

[5] Although this one entry indicates the pain was in Petitioner's left, rather than right, shoulder, it appears to be incorrect – mostly likely due to a simple mistake. Other entries in the same record indicate the right shoulder MRI was administered due to right shoulder pain. Exhibit 3 at 113. And it would be illogical for a *right* shoulder MRI to have been ordered in response to *left* shoulder pain.

[6] All citations to this orthopedist's medical records will be the complete copy provided in Exhibit 26. *See supra* note 4.

[7] Tramadol hydrochloride is "an opioid analgesic used for the treatment of moderate to moderately severe pain following surgical procedures and oral surgery, administered orally." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S ") at 1950 (32th ed. 2012).

now gone on to develop a frozen shoulder with loss of motion in all planes." *Id.* After the manipulation was performed, the cortisone injection was administered "through the anterior portal." *Id.*

- Following manipulation and the administration of a second injection, Petitioner attended five PT sessions in late June. Exhibit 4 at 17-21. At her first PT session on June 22, Petitioner rated her pain at a level of five out of ten. *Id.* at 9. It was again reported that "the pain in her shoulder started after a flu shot." *Id.* The date of the manipulation is incorrectly listed as June 28. *Id.*

- Petitioner attended one last PT session and was discharged on July 1, 2016. Exhibit 4 at 2, 14. In the record from the July 1 PT session, it was noted that Petitioner's pain was "better after every PT session." *Id.* at 14. Under assessment, the box noting that the "Patient continues to make appropriate progress toward established functional treatment goals" was checked. *Id.* On the discharge sheet, it was reported that Petitioner had "made all functional goals" and was "100%". *Id.* at 2. However, a mild restriction when lifting a gallon of milk was recorded, and Petitioner was instructed to continue a home exercise program ("HEP"). *Id.*

- On July 5, 2016, Petitioner returned to her orthopedist for a follow-up appointment regarding her right shoulder manipulation. Exhibit 26 at 8. Noting that she was doing wonderfully, the orthopedist assessed her as having "great range of motion," observing that her internal rotation "is to about L2 or so which is pretty good compared to where she started." *Id.* Petitioner reported that her "pain ha[d] not completely subsided and requested another prescription for pain medicine." *Id.* The orthopedist prescribed the requested medication and indicated "[w]e are going to put her back in physical therapy . . . and see how she does." *Id.*

- Petitioner returned to the orthopedist on August 23, 2016, complaining of "very significant pain in her left knee" which "came really just out of the blue." Exhibit 26 at 6. The orthopedist noted that he "ha[d] taken care of . . . [Petitioner's] shoulder in the past." *Id.* He also characterized her left knee pain as "surprising" considering the earlier injury to her right knee and its arthritic and unstable condition. *Id.* Opining that Petitioner's left knee pain may be due to a torn meniscus or bursitis, the orthopedist ordered an MRI bloodwork for her left knee and a brace for her right knee. *Id.* at 7.

- The MRI of Petitioner's left knee, performed on August 29, 2016, showed a torn meniscus, effusion and a leaking Baker's cyst, and evidence of an old injury. Exhibit 26 at 13.

- On August 30, 2016, Petitioner attended a second follow-up appointment regarding her right shoulder manipulation. Exhibit 26 at 4. The record from that visits indicates "that her range of motion has improved significantly, she still has some pain from time to time and is still improving, but overall is happy with her progress." *Id.* The orthopedist instructed Petitioner to continue her HEP and follow-up as needed. Explaining "that most frozen shoulder is resolved with conservative treatment," he stated that "the fact that [Petitioner] is improving is a good sign for her prognosis." *Id.* at 5.

- On September 6, 2016, at a preoperative consult, the orthopedist discussed the results of Petitioner's left knee MRI. Exhibit 26 at 3. The arthroscopic surgery to repair Petitioner's left knee torn meniscus was performed on September 16, 2016. *Id.* at 18-20.

- On November 18, 2016, Petitioner was seen by her PCP for a six-month follow-up and refill of her medication. Exhibit 3 at 24. The history in this record includes information about Petitioner's "bad flu experience" when the shot was given "high up on [her] shoulder" as well as her subsequent "frozen shoulder release." *Id.* Although the record contains some evidence indicating Petitioner was administered another flu vaccine that day, there is also a notation that she refused this vaccination. *Id.* at 25-26. There is nothing in this record indicating Petitioner was currently experiencing right shoulder pain.

- It appears Petitioner did not seek treatment again until April 10, 2017, when she visited her PCP for a physical exam. Exhibit 3 at 27. At this visit, the only complaints listed are depression, anxiety, hypothyroidism, and hypertension. Petitioner reported more anxiety since stopping drinking. However, she admitted having one drink while on vacation in Hawaii. *Id.* The record contains no complaints or evidence of right shoulder pain or limited range of motion ("ROM"), even under the results of Petitioner's physical examination. *Id.* at 27-30.

- Petitioner returned to her PCP on April 24, 2017, complaining of a cough and chest congestion. Exhibit 3 at 31. Again, there is no evidence of right shoulder pain and limited ROM in this record. *Id.* at 31-32.

- On August 15, 2017, Petitioner was seen at the clinic of the orthopedist who performed her 2012 right knee arthroscopy - who she saw in January 2016 for a re-evaluation of her right knee. Exhibit 10 at 7. She reported an exacerbation of her pain four days ago. *Id.* There is no mention of right shoulder pain or limited ROM in this record. *Id.* at 6-19.

- On September 6, 2017, more than one year after the last entry containing an account of right shoulder pain, Petitioner was seen by a neurologist, for right shoulder pain following her flu vaccine a year and a half ago. Exhibit 23 at 1. She noted that "[t]he pain is still there when she moves her right shoulder" and described it as sometimes radiating from her shoulder to her biceps and right wrist. *Id.* However, she reported that the pain is not constant or reproduced every time. And the results of the EMG performed that day were normal. Petitioner was told to follow-up with her PCP and orthopedist. *Id.* at 2-3.

- Petitioner did not complain of her right shoulder pain again until almost one year later, on August 30, 2018, when seen by a treating physician who appears to be a new PCP. Exhibit 11 at 1. The chief complaint for this visit is listed as a follow-up appointment for hypertension. *Id.* However, no prior medical records for this provider have been filed, and Petitioner has not explained when and why she switched PCPs.  In the record from this visit, it is noted that Petitioner "[a]lso continues to complain of right shoulder pain for the past 3 years." *Id.* Her condition was described as "[p]ain radiating to right shoulder." *Id.* The treating physician prescribed five days of Prednisone.

- The medical records reveal that Petitioner has taken 300mg of Gabapentin since March 2015, when it was prescribed for her right knee pain. Exhibit 3 at 14-15. It appears the dosage of this medication has remained throughout 2015-17. *Id.* at 18, 21, 25, 28, 32; Exhibit 11 at 1, 3.

- Petitioner filed three affidavits in this case: a basic affidavit, executed on January 21, 2019 (Exhibit 1); an affidavit regarding the effects of her injury on her work as a Mary Kay sales consultant, executed on January 29, 2020 (Exhibit 13); and an affidavit regarding the November 18, 2016 appointment with Petitioner's PCP, executed on August 15, 2020 (Exhibit 17). In the third affidavit, Petitioner maintained that she refused the flu vaccine offered at the November 18, 2016 PCP appointment. Exhibit 17 at ¶¶ 6, 8 (citing

Exhibit 3 at 25). She argues that the reason she rejected the vaccination was "continued pain in the right shoulder." *Id.* at ¶ 10.

- Petitioner also provided supporting affidavits from six family members regarding the onset and duration of her pain. Exhibits 15-16, 18-21. The affidavit from her husband provides the most detail. Exhibit 18. Except for the initial information regarding their relationship to Ms. Heil, the other family member affidavits are virtually identical and provide only basic information. Exhibits 15-16, 19-21.

### 1.     Pain Onset

It is common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own. The almost two-month delay in this case is thus not facially unreasonable. Additionally, Petitioner did not seek treatment for any other medical condition or illness during this 55-day period. Such intervening treatment evidence can in many cases either corroborate a petitioner's claim or undermine it – but it is totally absent here.

In multiple post-vaccination medical records, Petitioner consistently reported right shoulder pain, which never ceased, since vaccination. Exhibit 3 at 20, 113; Exhibit 4 at 9; Exhibit 26 at 10. Without fail, she attributed her injury to the flu vaccine she received on February 11, 2016. Exhibit 3 at 20; Exhibit 4 at 9; Exhibit 26 at 10. On at least one occasion, she identified the date of onset as February 11, 2016. Exhibit 26 at 10. While these entries were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury for the purposes of obtaining medical care.

The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied <u>to</u> or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

Although Respondent argues that Petitioner's description of right shoulder pain *since* vaccination is not specific enough to show an immediate onset, the record says otherwise. Motion at 9. The use of the term "since" suggests that Petitioner's right shoulder pain occurred immediately – upon vaccination. And, on at least one occasion, Petitioner identifies the date of vaccination as the onset of Petitioner's pain as the date of

vaccination. Exhibit 16 at 10; *see also* Exhibit 3 at 113 (April 12, 2016 entry describing pain for two months).

Only one history (in the medical record from Petitioner's right shoulder manipulation on June 20, 2016) indicates an onset more than a few days post-vaccination. But this one later entry is outweighed by the numerous entries, closer in time to vaccination, describing an immediate onset.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination. Specifically, I find the onset of petitioner's pain immediately upon vaccination.

### 2.      Duration of Pain and other Symptoms

Petitioner obtained significant pain relief and improved ROM following her manipulation, second cortisone injection, and PT in June 2016 - approximately four to five months post-vaccination. However, later provided orthopedic records reveal Petitioner continued to suffer a milder level of occasional pain as late as August 30, 2016 – more than six months post-vaccination.

On July 5, 2016 – four days after her last PT session, Petitioner reported that her "pain had not completely subsided" and requested another prescription[8] for pain medication. Exhibit 26 at 8. Her ROM was characterized as great, and she was prescribed 60 Norco[9] tablets. Exhibit 26 at 8. When she returned to the orthopedist on August 30, 2016, more than six months post-vaccination, Petitioner reported significant overall improvement and only "some pain from time to time." *Id.* at 4. Even though intermittent, this pain is sufficient to satisfy the Vaccine Act's severity requirement.

Petitioner maintains that she continued to suffer residual effects of her SIRVA injury for three years post-vaccination, but the record as it currently stands does not adequately support the longer duration Petitioner claims. Following her report of intermittent pain in late August 2016, despite seeking treatment for other conditions on numerous occasions, Petitioner complained of right shoulder pain on only two occasions: during a September 2017 visit to the neurologist and August 2018 visit to a treating physician who appears to be her new PCP. In September 2017, Petitioner admitted that

---

[8] On June 7, 2016, Petitioner had been prescribed 60 Tramadol tablets. Exhibit 26 at 9; *see supra* note 7.

[9] Norco is a "trademark for combination preparations of hydrocodone bitartrate and acetaminophen." DORLAND'S at 1290.

her pain occurred only occasionally with movement. For the first time in September 2017, she described right shoulder pain radiating to her wrist.

In their affidavits, Petitioner's family members provided extremely general and nearly identical statements merely indicating Petitioner complained of pain after her last PT session on July 1, 2016. Exhibit 15-16, 18-21. No further information regarding the timing of these statements was provided. Thus, they provide nothing to contradict or supplement the information already contained in the medical records in this case.

As it currently stands, the record shows that Petitioner was suffering mild SIRVA symptoms as late as August 30, 2016. However, it appears her injury had almost resolved by that time. And Petitioner did not seek treatment again or complain of any symptoms until almost a year later. Currently the record does not contain sufficient evidence to connect Petitioner's two subsequent complaints of pain (in late 2017 and 2018) to the SIRVA injury she appears to have suffered in February 2016. This will bear on my damages calculation, but it does not prevent Petitioner from obtaining an entitlement award.

### III.    Requirements for Table SIRVA

Because I have determined the onset of her right shoulder pain occurred immediately upon vaccination, Petitioner has met the timing required for a Table SIRVA and has fulfilled the second of the four QAI Table criteria. *See* 42 C.F.R. § 100.3(a)(XIV) (Table entry for SIRVA following influenza vaccine); 42 C.F.R. § 100.3(c)(10)(ii) (second QAI requirement). To establish that she suffered a Table SIRVA, Petitioner must satisfy the additional three QAI requirements. 42 C.F.R. § 100.3(c)(10)(i) (iii-iv).

The record in this case contains no indication that Petitioner suffered prior right shoulder issues. *See* 42 C.F.R. § 100.3(c)(10)(i). Nor is there evidence of any other condition or abnormality that would explain the left shoulder pain she experienced in 2016. *See* 42 C.F.R. § 100.3(c)(10)(iv).

Petitioner consistently described the pain she experienced in 2016 as located in her right upper arm or shoulder. Exhibit 3 at 20; Exhibit 4 at 9; Exhibit 14 at 1; Exhibit 26 at 8, 10. She did not describe pain which radiated to other locations until 2017. Exhibit 23 at 1. Likewise, Petitioner exhibited limited ROM in only her right shoulder. Thus, Petitioner has satisfied all QAI criteria for a Table SIRVA.

### IV.     Additional Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows Petitioner received the flu vaccine in her right deltoid at her PCP in Flint, Michigan. Exhibit 3 at 20; Exhibit 7 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, there is no evidence that Petitioner has collected a civil award for his injury. *See* Section 11(c)(1)(E) (lack of prior civil award).

Finally, as I have determined in this ruling, the medical records show that Petitioner continued to suffer right shoulder pain at least as late as August 30, 2016. *See supra* Section II.B.2. Thus, Petitioner suffered the residual effects of her SIRVA for at least six months post-vaccination, in this case beyond August 11, 2016. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### V.     Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA and the Vaccine Act's severity requirement needed for both Table and non-Table claims. Petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master